IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICO TOMAZ,

        Plaintiff,                    No. CIV S-05-2432 MCE GGH P

   vs.

YOLO COUNTY SHERIFF'S
DEPARTMENT, et al.,

        Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment (MSJ), filed on July 25, 2007. On August 22, 2007, with no opposition yet filed in the court's docket, defendants filed a document noting plaintiff's failure to file any opposition, contending that plaintiff had thus waived any opposition and asking the court to grant the motion. See defendants' reply to plaintiff's non-opposition to MSJ. However, in a document file-stamped August 27, 2007, plaintiff did file an opposition. The proof of service attached to the document indicates, under penalty of perjury, that plaintiff served his opposition on August 22, 2007. As

\\\\\

1

an incarcerated pro se litigant, plaintiff is entitled to application of the mailbox rule.[1] Subsequently, defendants filed, on September 4, 2007, their reply to the opposition. The court will deem plaintiff's opposition timely filed.

Complaint

This matter is proceeding on the original complaint, filed on December 2, 2005, as modified by Order, filed on September 18, 2006, wherein the district judge adopted the Findings and Recommendations, filed on June 29, 2006, and dismissed from this action the City of West Sacramento's insurance carrier as a separate and individually named defendant. The remaining defendants are the Yolo County Sheriff's Department (Dept.); the City of West Sacramento; and the West Sacramento Police Dept.[2] Form Complaint, pp. 1-3.

According to plaintiff, on November 17, 2004, he was lying on his stomach while he was being arrested and handcuffed by an unnamed Yolo County Sheriff's Deputy. Another unnamed individual who was a West Sacramento Police Officer, while driving past the scene of the arrest with a prisoner in his vehicle to be transported to jail, stopped his vehicle and jumped out "hollering racial slurs toward Indians." The West Sacramento policeman proceeded to where plaintiff lay handcuffed on his stomach and began beating plaintiff with his baton until plaintiff's right hand was broken. This occurred in front of two other witnesses, whom plaintiff does not identify. The West Sacramento officer "then abruptly jumped back into his unit" to transport his prisoner to the county jail. Id., at 2.

Plaintiff seeks money damages, as well as injunctive relief, asking for continued therapy for his damaged right hand and knee. Id.

\\\\\

---

[1] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988), pro se prisoner filing is dated from the date prisoner delivers it to prison authorities.

[2] Plaintiff also named "Assaulting Officer," as a defendant, but the court is unable to direct service upon an unnamed individual.

2

Motion for Summary Judgment

Defendants move for "total/partial summary judgment," on the ground that "plaintiff cannot point to a single policy or custom which resulted in a deprivation of his constitutional rights under Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978)." Notice of Motion, p. 1.

*Legal Standard for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

\\\\\

3

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

4

obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On June 29, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

*Undisputed Facts*

Defendants' undisputed facts are entirely unaddressed, and thus herein deemed undisputed, by plaintiff. DUF 1. Plaintiff filed a form complaint entitled "Form to be Used by a Prisoner Filing a Complaint Under the Civil Rights Act. 42 U.S.C. § 1983." (1. Complaint.) DUF 2. On June 29, 2006, the Court ordered service on the Yolo County Sheriff's Department, the City of West Sacramento, and the West Sacramento Police Department. (2. Official Court Docket, Entry No. 13.) DUF 3. The Court dismissed GAB Robins Insurance from this lawsuit on September 18, 2006 because plaintiff failed to show that GAB had a legal duty toward plaintiff. (3. Court Docket Entry Nos. 14 & 20). DUF 4. The Yolo County Sheriff's Department, the City of West Sacramento, and the West Sacramento Police Department filed their answer on September 18, 2006. (4. Answer.[3]) DUF 5. On March 26, 2007, defendants served plaintiff with special interrogatories requesting he identify the specific policies and/or customs of Yolo County, the City of West Sacramento, and the West Sacramento Police Department that plaintiff believed supported each of the allegations in his Complaint. (5.

---

[3] Puzzlingly, within the Answer, defendants refer, inter alia, to allegations on (non-existent) pages 4 and 5 of a three-page complaint. See Answer, p. 2.

Exhibit A to the Declaration of Susan A. DeNardo ¶ 3).  DUF 6. Plaintiff then served both the County of Yolo and the City of West Sacramento with Public Records Act Requests.  6. Exhibit C[4] to the Declaration of Susan A. DeNardo.  DUF 7. The County of Yolo and the City of West Sacramento sent plaintiff policies responsive to plaintiff's Public Records Act requests.  (7. Exhibit C to the Declaration of Susan A. DeNardo.)  DUF  8. Plaintiff then produced the documents given to him pursuant to his Public Records Act Request and typed his excerpts of these documents to Defendants in response to their special interrogatories.  (8. Exhibit C to the Declaration of Susan A. DeNardo.)  DUF  9. The Court issued a Scheduling Order on February 9, 2007, mandating that all discovery be served not later than March 26, 2007.   (9. Court Docket No. 24.[5])  DUF 10. On May 9, 2007, plaintiff served defendants with discovery requests, namely special interrogatories.  (10. Exhibit B to Declaration of Susan A. DeNardo ¶ 5.)  DUF 11. At least in part, these interrogatories requested defendants' use of force policies and arrest procedures.  (11. Exhibit B to the Declaration of Susan A. DeNardo.)  DUF 12. Despite the tardiness of plaintiff's request, defendants responded with much of the same material that was already produced to plaintiff in response to the Public Records Act. 12. Declaration of Susan A. DeNardo ¶ 5.[6]

*Discussion*

Under Monell v. Department of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-2038:

---

[4] Where defendants have mis-identified or mis-typed the letter of the exhibit supporting some of the undisputed facts attached to the DeNardo Dec., the court has made the appropriate correction.

[5] The Scheduling Order expressly set forth that discovery could be conducted until May 25, 2007, with any motions to compel discovery to be filed by that date.  Discovery requests were therein required to be served not later than sixty days prior to May 25, 2007, i.e., as defendants correctly infer, by March 26, 2007.

[6] Paragraph 5 of the DeNardo Dec. mis-identifies plaintiff's May 9, 2007, discovery requests as Exhibit C, but they are attached as Exhibit B.

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Police officers making an arrest are authorized, under the Fourth Amendment, "to use only an amount of force that is objectively reasonable in light of the circumstances facing them." Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007). In the instant case, plaintiff seeks to hold the defendants liable for the actions of an unnamed officer who allegedly inflicted an injury upon him, using excessive force, as plaintiff was being arrested, while another unnamed officer did not act to stop this alleged action.

A city may be held liable for the excessive force of arresting officers under § 1983 "if its deliberate policy caused the constitutional violation alleged." Blankenhorn, at 484, citing Monell v. Dept. of Social Services of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir.2001)." In Blankenhorn, the plaintiff complained of the defendant City's failure to train a police officer. The Ninth Circuit stated that to support such a claim, the plaintiff "must show that (1) he was deprived of a constitutional right, (2) the City had a training policy that " 'amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the City properly trained those officers." Id., citing Lee, 250 F.3d at 681 (quoting City of Canton v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). However, because plaintiff therein only produced evidence regarding the failure to train as to a single officer, which the court found to be "insufficient to establish a municipality's deliberate policy," he did not thereby meet his burden to withstand the defendants' summary judgment motion. Blankenhorn, supra, at 484-485.

In this case, as defendants aver, plaintiff does not identify any policy or procedure of the defendants which he claims violated his constitutional rights; he does not even name the

7

officer that he claims inflicted his injury. In his opposition (Opp.), plaintiff goes so far as to assert that "defendants blatantly violated their own policies, rules and customs...." Opp., p. 2. As defendants note, this allegation is an implicit concession of the constitutionality of those policies and customs. Reply, pp. 3-4.

Plaintiff seeks to impugn defendants for a putative failure to name the officer who committed the assault upon him and to provide him with information as to whether that officer had prior assaults, reprimands, or complaints of excessive force in his record. Opp., p. 2. He contends that he has sustained permanent injuries due to the misconduct of the unnamed officer and that no official is above the law or has the right to violate official policies. Plaintiff claims that there are medical reports/records, eyewitness accounts, police reports that substantiate his allegations and that these will be brought out at trial.[7] Opp., pp. 2-7. However, plaintiff produces none of this material in opposition to the motion.

The court's review of plaintiff's discovery requests to defendants reveals that nowhere did plaintiff ask the defendants to provide the name of either the alleged assaulting officer (the unnamed West Sacramento Police Officer) or that of the unidentified Yolo County Sheriff's Deputy who handcuffed and arrested him. Nor does plaintiff state in his opposition that he sought the identity of either of these individuals, merely contending that "his name will eventually come forth during trial." Opp., p. 5. The only reference that the court can find in plaintiff's discovery requests related to the officer that plaintiff avers injured him states as follows: "Interrogatory No. 6. Identify any officer, specifically the officer involved in the assault had recently or ever been in the United States military with duty in Iraq or Afghanistan, and if so has that officer been treated for post stress syndrome or anger related issues, or any citizens

---

[7] Plaintiff also points out that defendants mistakenly identify the City of Susanville as a defendant in the closing page of their supporting memorandum (MSJ, p. 6). Opp., p. 6. However, defendants subsequently filed, on Dec. 28, 2007, a notice of errata, indicating that everywhere else in their moving papers and in their reply the defendants were correctly named and the one instance was a typographical error.

complaint filed." MSJ, Exhibit B to Denardo Dec.  Although awkwardly phrased, plaintiff seems to be seeking information as to whether or not the officer at issue might be suffering from post-traumatic stress disorder, but plaintiff does not make a straightforward request for the officer's name.  In fact, almost the exclusive focus of plaintiff's discovery requests is on defendants' hiring and arrest policies and procedures.

As defendants accurately note, plaintiff has had adequate time to learn the name of the officer who caused him any injury following the November 17, 2004, incident, nor did plaintiff complain of defendants' discovery responses or bring a motion to compel at the appropriate time.  Reply, pp. 4-5.  In this case, plaintiff has wholly failed to meet his burden with respect to the defendants who have been named.  He does not identify or implicate as unconstitutional any policy or procedure of the defendants or ascribe his injury to any such policy.  As noted above, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) See id. at 322, 106 S. Ct. at 2552.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, filed on July 25, 2007 (#28), be granted, and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

\\\\\

1  that failure to file objections within the specified time may waive the right to appeal the District
2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: 02/21/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

GGH:009
toma2432.msj

10